Samuel L. WOMBACHER and
Lisa Wombacher, his
wife, Appellants

v.

GREATER JOHNSTOWN
SCHOOL DISTRICT.

Commonwealth Court of Pennsylvania.

Argued April 4, 2011.
Decided May 3, 2011.

Alexander J. Jamiolkowski, Pittsburgh, for appellants.

Michael L. Fitzpatrick, Carnegie, for appellee.

BEFORE: PELLEGRINI, Judge, and SIMPSON, Judge, and FRIEDMAN, Senior Judge.

OPINION BY Judge PELLEGRINI.

Samuel L. Wombacher (Mr. Wombacher) and Lisa Wombacher, his wife (together, the Wombachers), appeal from an order of the Court of Common Pleas of Cambria County (trial court) granting the motion for summary judgment filed by the Greater Johnstown School District (District) because the District did not owe Mr. Wombacher a duty of care. Finding no error in the trial court's opinion, we affirm.

The uncontested facts as gleaned from the pleadings are as follows. The District contracted with Charter Communications to install, operate and maintain all cable, electronics, material and equipment at its administration building. Charter Communications then subcontracted with Tel–Power, Inc. (Tel–Power) to do the actual installation of the fiber optic cable. Mr. Wombacher was employed by Tel–Power as a lineman. On October 17, 2002, Mr. Wombacher arrived at the District's administration building to complete the installation and inspected the back of the structure. No one from the District accompanied Mr. Wombacher during the investigation of the outside of the building or specified where the cable should be attached. Mr. Wombacher and Jerry Adams (Mr. Adams), a supervisor for Charter Communications who was present at the scene, both decided to attach the cable to a pre-existing metal bracket, typically used for such cable installation, which was located on one of the brick columns of the building. Mr. Wombacher climbed a ladder, which he had propped alongside the column, but when he tightened the cable, the top of the column gave way. Mr. Wombacher fell approximately 10 to 14 feet onto the ground, and a large piece of the column landed on him causing various injuries including a compound fracture of his left tibia and fibula. Apparently, the column gave way because it was not actually attached or tied into the structure, but was merely a facade.

The Wombachers filed a civil action against the District claiming it was negligent and breached its duty of care to Mr. Wombacher as a contractor by failing to warn him or his supervisors of the danger posed by the defective column. The District filed an answer with new matter claiming the cause of action was barred by the provisions of the Political Subdivisions Tort Act, 42 Pa.C.S. §§ 8541—8550. The District then filed a motion for summary judgment arguing it was not liable because it turned the work over to a competent contractor who was in a better position to discover the non-obvious defect and should have warned its own employees. In addition, the District also asserted that it was not aware that the brick column would collapse under these circumstances; that Mr. Wombacher failed to offer any evidence that a reasonable inspection of the building would have revealed the latent defect; that Mr. Wombacher did not consult with anyone from the District to determine how or where the cable should be installed; that Mr. Wombacher used his employer's equipment to complete the work; and that no one from the District was present during the installation or was even aware that Mr. Wombacher was working on the back of the building at that time.

The trial court, sitting en banc, granted the District's motion. The trial court noted that Pennsylvania law "generally insulates property owners from liability for the negligence of independent contractors and places responsibility for the protection of the contractor's employees on the contractor and the employees themselves." *Warnick v. The Home Depot U.S.A., Inc.,* 516 F.Supp.2d 459, 466 (E.D.Pa.2007) (quoting *Gutteridge v. A.P. Green Servs., Inc.,* 804 A.2d 643, 656 (Pa.Super.2002)). According

to the trial court, there were only two exceptions to this general rule—if the landowner maintained control over the means and methods of the contractor's work or if the work being performed involved a peculiar risk. *Warnick*, 516 F.Supp.2d at 467 (citing *Farabaugh v. Pennsylvania Turnpike Commission*, 590 Pa. 46, 911 A.2d 1264 (2006)). However, the District was unaware of the defect and did not have control over the means and methods of Tel–Power's work. Because neither of the two exceptions was met, the trial court held that the District owed no duty to Tel–Power, the subcontractor.

On appeal,[1] the Wombachers argue that the trial court erred in finding that the District had no duty to inform Mr. Wombacher or Tel–Power of the dangerous condition on its property because the condition was not obvious to Mr. Wombacher and the District knew or should have known of the condition through a reasonable inspection. We disagree.

 As in any negligence case, the mere fact that an accident occurred does not entitle the Wombachers to a verdict. *Gutteridge*, 804 A.2d at 655. Rather, they must demonstrate that the District owed Mr. Wombacher a duty of care and that this duty was breached. *Id.* Whether or not a landowner owes a duty of care to someone who enters upon the land, and what the appropriate standard of care is, depends upon the classification of the entrant—whether he or she is a trespasser, licensee or invitee. *Carrender v. Fitterer*, 503 Pa. 178, 184, 469 A.2d 120, 123 (1983). Employees of independent contractors are considered invitees who fall within the classification of business visitors. *Gutteridge*, 804 A.2d at 655. Regarding a landowner's duty to invitees, Pennsylvania has adopted Section 343 of the Restatement (Second) of Torts, which states:

A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he:

(a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and

(b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and

(c) fails to exercise reasonable care to protect them against the danger.

*Restatement (Second) of Torts* § 343; *see also Carrender*, 503 Pa. at 185, 469 A.2d at 123. Pennsylvania courts have interpreted this as a narrow theory of liability:

Pennsylvania law imposes no general duty on property owners to prepare and maintain a safe building for the benefit of a contractor's employees who are working on that building. Rather, our law generally insulates property owners from liability for the negligence of independent contractors and places responsibility for the protection of the contractor's employees on the contractor and the employees themselves. Nevertheless, as noted above, a landowner must protect an invitee not only against known dangers, but also against those which might be discovered with reasonable care.

---

1. The issue before this Court is purely a question of law; therefore, our review is plenary. *In re: SEPTA MVFRL Interest Litigation*, 996 A.2d 1099, 1102 n. 2 (Pa.Cmwlth.2010). In general, summary judgment is only proper when, after examining the record in the light most favorable to the non-moving party, the record clearly demonstrates that there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Manley v. Fitzgerald*, 997 A.2d 1235, 1238 n. 2 (Pa.Cmwlth.2010).

*Gutteridge,* 804 A.2d at 656 (internal citations omitted).[2]

■ The Wombachers concede in their pleadings, as well as their brief to this Court, that the District did not have actual knowledge of the dangerous condition and that it was a latent defect. However, they assert that the District had constructive notice of the condition because the defect allegedly could have been discovered upon reasonable inspection. The Wombachers rely solely upon the deposition testimony of Thomas Mulvehill (Mr. Mulvehill), the District's head of maintenance. According to the Wombachers, Mr. Mulvehill testified that he knew the column would break free from the building if a cable was ratcheted to it. However, no such statement exists in the record.[3]

What Mr. Mulvehill did testify to in his deposition is that if he had known Mr. Wombacher was going to attach cable to the building that day, he would not have let him use the pre-existing bracket because he did not know how it was attached to the column, and the bolts could have been rusted. (Reproduced Record (R.R.) at 148a). Mr. Mulvehill also testified that there was caulking running between the column and the building and stated:

If I seen caulking here, that would make me suspect that that brick is not attached to that wall because if that brick was tied into that wall, there wouldn't be need for caulking.

(R.R. at 151a).

■ However, this testimony does not go to whether the dangerous condition of the property would be apparent upon reasonable inspection[4] because there is no indication that the column by itself was dangerous—it was not crumbling, in a state of disrepair, or about to fall on its own. What made the column give way was the force exerted by Mr. Wombacher when he attached the cable to the building and ratcheted it through the bracket pulling it tight. Pennsylvania courts have repeatedly held that a duty cannot be imposed upon a landowner if the defective condition was created by the work of the independent contractor or his employees. *See Crane v. I.T.E. Circuit Breaker Co.,* 443 Pa. 442, 445, 278 A.2d 362, 364 (1971) (citing *Celender v. Allegheny County Sanitary Authority,* 208 Pa.Super. 390, 222 A.2d 461 (1966)). That is exactly what occurred in this case. Because the dangerous condition was caused by the work of Mr. Wombacher, the trial court correct-

2. It should be noted that there are two exceptions to the general rule of non-liability for landowners who turn their land over to contractors and their employees—if the landowner exercises control over the means and methods of the contractor's work, or if the work involved a peculiar risk of physical harm. *See Farabaugh v. Pennsylvania Turnpike Commission,* 590 Pa. 46, 911 A.2d 1264 (2006). The facts of this case clearly do not fit either exception, and the Wombachers did not raise either argument in their brief to this Court.

3. We note that neither the original record nor the reproduced record submitted in this case contain the entire transcript of Mr. Mulvehill's deposition. They both contain eight nonconsecutive pages of testimony, and we

are limited to examining only the record and pleadings actually submitted.

4. If Mr. Mulvehill's statements prove anything, it is that the alleged defect should have been at least as obvious to Mr. Wombacher and Tel–Power—contractors with extensive experience in the area of cable installation—as it was to the District as landowner. When a condition is at least as obvious to a contractor as it would be to the landowner, the law imposes no duty upon the landowner to warn the contractor or its employees of the condition. *Colloi v. PECO,* 332 Pa.Super. 284, 481 A.2d 616, 620 (1984) (citing *Repyneck v. Tarantino,* 415 Pa. 92, 95, 202 A.2d 105, 107 (1964)).

ly held that the District did not owe him a duty of care or a duty to warn.

In addition, Mr. Wombacher is an experienced lineman and attaching cable to the outside of a building is an activity at the very heart of Tel–Power's regular course of business. Mr. Wombacher no doubt had significant experience in this area. He also admitted that he used his employer's own equipment, and that he and Mr. Adams made the decision to place the cable along the column and utilize the pre-existing bracket. Our Supreme Court has held that "when [a landowner] turns the work over to an independent contractor with experience and know-how, who selects his own equipment and employees, the possessor of land has no further liability in connection with the work to be done." *Brletich v. U.S. Steel Corp.*, 445 Pa. 525, 532, 285 A.2d 133, 137 (1971).

Because the District did not owe a duty to Tel–Power or Mr. Wombacher to warn them of the allegedly dangerous condition, the order of the trial court is affirmed.

### ORDER

AND NOW, this 3rd day of May, 2011, the order of the Court of Common Pleas of Cambria County, dated July 7, 2010, at No. 2004–3475, is hereby affirmed.

DISSENTING OPINION BY Senior Judge FRIEDMAN.

I respectfully dissent. The majority holds that the deposition testimony of Thomas Mulvehill, an employee of the Greater Johnstown School District (District), did not create a question of fact for the jury as to whether the District owed a duty to Tel–Power, Inc., or Samuel L. Wombacher to warn them not to use a metal bracket on a brick column to install cable in the District's administration building. Therefore, the majority affirms the order of the Court of Common Pleas of Cambria County (trial court) granting summary judgment to the District. For the following reasons, I cannot agree.

A landowner " 'is subject to liability for physical harm caused to his invitees by a condition on the land, if ... by the exercise of reasonable care [the landowner] would discover the condition, and should realize that it involves an unreasonable risk to such invitees....' " *Neve v. Insalaco's*, 771 A.2d 786, 790 (Pa.Super.2001)(quoting Restatement (Second) of Torts § 343). Thus, an owner cannot escape liability to a contractor when a defect is not obvious to the contractor and the owner can discover it upon reasonable inspection. *Gutteridge v. A.P. Green Services, Inc.*, 804 A.2d 643, 656 (Pa.Super.2002).

Here, Wombacher attempted to install cable by attaching it to a metal bracket on a brick column. When Wombacher tightened the cable, the column gave way, which caused Wombacher to fall and sustain various injuries. Mulvehill testified that, "[i]f [he had known] there was work going to be done on that," he would have inspected the building. (Mulvehill Dep., 10/17/07, at 43.) Mulvehill further testified that, if he had inspected the building, he would have known that the columns were unattached, and he "would have never advised [Wombacher] to use those columns." (*Id.*, at 54, 61.) I submit that a jury could reasonably infer from Mulvehill's testimony that, upon reasonable inspection, the District would have discovered that the column was not attached to the building, and, thus, the District had a duty to warn Wombacher not to use the column to install the cable.

The majority states that Mulvehill's testimony is irrelevant because the defective condition in this case was not the column, but the "force exerted" by Wombacher on

the column after he attached the cable to it. (Majority Op. at 1243.) However, I fail to see how a "force exerted" on a defective condition of a building can be the defective condition of the building. Assuming that were possible, whether the defective condition was the column or the "force exerted" by Wombacher on the column is a disputed question of material fact for the jury that precludes summary judgment in this case.[1]

The majority also states that Wombacher "no doubt had significant experience in this area," and, thus, "the alleged defect should have been at least as obvious to Mr. Wombacher." (Majority Op. at 1243.) The words "no doubt" indicate actual knowledge, but the majority merely **assumes** that Wombacher had sufficient experience to detect the defective condition in this case. Indeed, if the record supported such a statement, the majority would have indicated as much. To the extent the record is unclear about Wombacher's experience, in reviewing a grant of summary judgment, we must read the record in the light most favorable to the nonmoving party, i.e., in the light most favorable to Wombacher. *See Manley v. Fitzgerald,* 997 A.2d 1235, 1238 n. 2 (Pa.Cmwlth.2010). Here, the record definitely shows that Wombacher did **not** realize that the column was unattached to the building. Moreover, to the extent that Wombacher's experience is relevant, it is another disputed question of material fact for the jury that precludes summary judgment in this case.

Because there are disputed questions of material fact that should go to a jury, I submit that summary judgment was not warranted in this case. Thus, unlike the majority, I would reverse.

---

1. Summary judgment is only proper when, after examining the record in the light most favorable to the non-moving party, the record clearly demonstrates that there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Manley v. Fitzgerald,* 997 A.2d 1235, 1238 n. 2 (Pa.Cmwlth.2010).